UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:
BARBARA A. WILLIAMS and
BRUCE W. WILLIAMS,

Debtors.

Case No. A12-00620-GS

Chapter 13

**MEMORANDUM ON MOTION FOR RELIEF
FROM STAY REGARDING REAL PROPERTY
[Lots 4 and 5 Eklutna East Subdivision]**

Creditor Alaska Financial Company2, LLC (Alaska Financial) seeks relief from the automatic stay to pursue its rights and remedies as to debtor Barbara and Bruce Williams' residence, located at 21323 Gorsuch Street, Chugiak, Alaska 99567 (the "Property").[1] Its *Motion for Relief from Stay (Motion)* strays from the ordinary in that it seeks relief *nunc pro tunc* to December 20, 2012, when Alaska Financial conducted its non-judicial foreclosure sale of the Property. The foreclosure sale occurred shortly after the court dismissed the debtors' chapter 13 case, and before reinstatement of the case pursuant to the debtors' motion for reconsideration. Reinstatement raises questions regarding the application of the automatic stay. Alaska Financial believes that reinstatement of the bankruptcy does not affect the foreclosure sale that terminated the Williams' ownership of the Property. The debtors argue that even if the foreclosure sale did not violate the automatic stay, the equities of their situation require that the court set aside the foreclosure sale. The court conducted a final hearing on the *Motion* on February 12, 2013, at which all issues were argued.

---

[1] The legal description for the Property is: Lots 4 and 5 of Eklutna East Subdivision, according to Plat 72-114 filed in the Anchorage Recording District, Third Judicial District, State of Alaska.

**Facts**

Alaska Financial holds a deed of trust against the debtors' residence.  After the debtors became delinquent, it noticed a non-judicial foreclosure for June 19, 2012.  The day before the foreclosure, the debtors filed a chapter 7 petition (*Williams I*)"[2] to stay the foreclosure.  Proceeding *pro se*, the debtors voluntarily converted the case to chapter 13.  Unfortunately, they failed to timely file their chapter 13 plan and means test, triggering an order to show cause why the case should not be dismissed.[3]  At the show cause hearing, the court granted the debtors additional time to file the required documents.  When they again failed to file their documents, the court dismissed the case.[4]  Undeterred, the debtors successfully sought reconsideration.[5]  The bankruptcy court set September 10, 2012, as the new deadline for the filing of the documents, and again advised the debtors that the case might be dismissed without further notice or hearing if they failed to comply.[6]

Instead of filing the documents, the debtors filed a motion to extend the deadline.  The court held a hearing on the motion, but declined to extend the time to file the plan and means test.[7]  When the debtors still failed to comply, the court issued yet another order to show

---

[2] *In re Williams* ("*Williams I*"), Case No. 12-00381 (Bankr. D. Alaska).

[3] *Id.* at Docket No. 28.

[4] *Id*. at Docket No. 35.

[5] *Id*. at Docket No. 37.

[6] *Id.*

[7] *Id*. at Docket No. 43.

2

cause why the case should not be dismissed.[8]  The debtors sought to extend the show cause hearing as well.  That request was also denied.  On October 2, 2012, the court dismissed *Williams I*.[9]

Alaska Financial postponed and rescheduled its foreclosure sale during the pendancy of *Williams I*.  The first scheduled foreclosure sale after dismissal of *Williams I* was October 16, 2012.[10]  However, the debtors filed the instant chapter 13 case the day before the sale.  Alaska Financial quickly moved to dismiss the bankruptcy under 11 U.S.C. § 109(g) for the debtors' willful failure to abide by court orders in *Williams I*; specifically, their failure to file their means test and plan.  The court denied the motion, and scheduled a confirmation hearing for January 8, 2013.[11]  In its scheduling order, the court directed the debtors to serve and notice their proposed plan by November 30, 2012.[12]  The court emphasized that "[t]he trustee may lodge a dismissal order if the debtors fail to timely comply with the requirements of this order, pursuant to AK LBR 3015-3(b)(2)."[13]

The debtors failed to notice the plan.  The case was dismissed on December 12, 2012.[14]  The debtors waited almost two weeks before seeking reconsideration of the dismissal

---

[8] *Id.* at Docket No. 44.

[9] *Id.* at Docket No. 50.

[10] Alaska Financial's *Supp. Brief in Supp. of Mot. for Relief from Stay* (Docket No. 56), at Ex. B.

[11] Docket No. 30.

[12] Docket No. 31.

[13] *Id.*

[14] Docket No. 36.

3

order on December 24, 2012.  The court granted reconsideration and reinstated the case on December 28, 2012.[15]  Between dismissal and reinstatement, however, Alaska Financial held its non-judicial foreclosure sale on December 20, 2012.

## Analysis

Alaska Financial contends that its foreclosure remains unaffected by reinstatement of the bankruptcy, and seeks relief from the automatic stay to take actions in furtherance of its non-judicial foreclosure, including those necessary to obtain possession.  Alternatively, it seeks relief *nunc pro tunc* to December 20, 2012, the date of the foreclosure sale, to validate the sale retroactively.  The debtors oppose the *Motion*, and request that the foreclosure sale be vacated on equitable considerations.[16]  Specifically, they contend that Alaska Financial took advantage of an illness suffered by Mr. Williams to sell their house while he was undergoing treatment.  Additionally, they will lose their homestead exemption in the Property if the foreclosure is not set aside.[17]

---

[15] Docket No. 38.

[16] At the preliminary hearing, the debtors argued that Alaska Financial's continuation of the foreclosure sale during the pendency of the two bankruptcy cases violated the automatic stay, and that the continued sale was void because they had not received actual notice of the continued sale date. The court requested supplemental briefing on these points because they were raised for the first time at oral argument. The debtors' supplemental briefing conceded that the post-petition continuation of a foreclosure sale does not violate the automatic stay, because it simply preserves the status quo. *Debtors' Supp. Brief Opp. of Mot. for Relief from Stay* (Docket No. 57) at 4; *See also First Nat'l. Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316, 1318 (9th Cir. 1981).  They also acknowledged that Alaska law did not require Alaska Financial to provide them with actual notice of the date for the continued foreclosure sale. *Debtors' Supp. Brief* (Docket No. 57) at 4.  Because the debtors have now conceded both points, the court will not discuss them further in this *Memorandum*.

[17] There is considerable confusion regarding the value of the Property.  Alaska Financial's *Motion* recites that the Property has a total tax assessed value of $333,600, while the total secured debt is only

Section § 362(c) governs the termination of the automatic stay.[18] Acts against the debtor are stayed until either the case is closed or dismissed, whichever is earlier.[19] Acts against property of the estate are stayed until such property is no longer property of the estate.[20] Dismissal effectively terminates the stay as to property, however, because it necessarily terminates the estate and revests all property in the debtor.[21] Unlike relief from stay, an order of dismissal is immediately effective upon entry.[22] Therefore, a creditor is "free to take action to enforce its rights in a debtor's assets from the moment that the dismissal order is entered."[23] Where a bankruptcy court vacates a dismissal order, the automatic stay is reinstated as well.[24] The reinstated stay, however, does not generally attach

---

$194,626.84 (comprised of Alaska Financial's deed of trust and outstanding real property taxes), theoretically leaving $138,973.16 in equity. *Motion* at 3. The debtors valued the Property at $294,100 in their *Schedule A* (Docket No. 20). When asked about the value of the Property at the final hearing, debtors' counsel informed the court that the debtors had made inquiries, and believed the value to be between $250,000 - $280,000. Alaska Financial contends that the value is significantly less based upon the condition of the residence. A determination of value is unnecessary for purposes of this analysis, but there appears to be less equity than originally thought.

[18] 11 U.S.C. § 362(c). Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

[19] 11 U.S.C. § 362(c)(2).

[20] 11 U.S.C. § 362(c)(1).

[21] 11 U.S.C. § 349(b)(3). *See also Martir Lugo v. de Jesus Saez (In re de Jesus Saez),* 721 F.2d 848, 851 (1st Cir. 1983); *Kline v. Deutsche Bank National Trust Co.,* 472 B.R. 98, 104 (B.A.P. 10th Cir. 2012).

[22] *Compare de Jesus Saez*, 721 F.2d at 851 (stay immediately terminates upon dismissal), *with* Fed. R. Bank. P. 4001(a)(3) (orders granting relief from stay are stayed for 14 days).

[23] *Kline*, 472 B.R. at 104.

[24] *Sewell v. MGF Funding, Inc. (In re Sewell)*, 345 B.R. 174, 179 (B.A.P. 9th Cir. 2006).

5

retroactively to void acts taken in the gap period between dismissal and reinstatement.[25] In limited instances, courts have set aside foreclosure sales conducted within this gap period where they have found due process issues.[26]

The debtors have abandoned any due process challenges to the foreclosure sale. Instead, they rely exclusively upon *In re Barry*, 201 B.R. 820 (C.D. Cal. 1996), in which the district court set aside a foreclosure sale based upon equitable considerations. There, the bankruptcy court dismissed the case on the trustee's unopposed motion for failure to make plan payments. Several months after dismissal, the secured creditor conducted a foreclosure sale on the debtor's residence. Shortly afterwards, the debtor sought relief from dismissal of the bankruptcy, stating that he had made the plan payments and had not received notice of the motion to dismiss. The debtor established that he had been making payments, even after dismissal, but the trustee had not received the payments because she had moved to a new address. Additionally, the debtor had not received the trustee's motion to dismiss, or the court's dismissal order, because he had also changed his business address. The bankruptcy court granted the motion to reopen the case.

After the case was reopened, the secured creditor sought relief from the automatic stay to proceed with an unlawful detainer proceeding against the debtor, arguing that it had properly foreclosed its lien during the gap period. The bankruptcy court granted relief from

---

[25] *Nicholson v. Nagel (In re Nagel),* 245 B.R. 657 (D. Ariz. 1999); *In re Hill*, 305 B.R. 100 (Bankr. M.D. Fla. 2003) (collecting cases). *See also Sewell,* 345 B.R. at 179-180.

[26] *Great Pacific Money Markets, Inc. v. Krueger (In re Krueger),* 88 B.R. 238 (B.A.P. 9th Cir. 1988); *In re Acosta*, 181 B.R. 477 (Bankr. D. Ariz. 1995); *but see Nagel,* 245 B.R. at 664 (rejecting additional notice requirements in excess of applicable state statute).

6

the stay. On appeal, however, the district court reversed, finding that equitable considerations required the bankruptcy court to set aside the foreclosure sale. Specifically, the district court found that the debtor had continued to make all of its post-confirmation arrearage payments. The court also found that the debtor did not receive notice of the dismissal, so "he was unable to inform the bankruptcy court that he had been making timely payments."[27] Under such circumstances, the district court concluded "that equitable principles warranted reversing the foreclosure sale and extending the automatic stay to the Property."[28]

Importantly, dismissal in *Barry* was improvidently granted based upon insufficient notice to the debtor and incomplete knowledge by the trustee. Due to address changes by both the trustee and the debtor, the debtor's plan payments were not received by the trustee, and the motion to dismiss and order of dismissal were not received by the debtor. This is a far cry from the present situation. Here, the debtors failed to notice their chapter 13 plan in the face of an express warning that such failure could result in dismissal without further notice. Reviewing the history for both the instant case and *Williams I*, it is clear that the debtors have had numerous opportunities and chances to get a chapter 13 plan implemented. In spite of this, they have not succeeded. Now, having had two bankruptcy cases dismissed

---

[27] *Barry*, 201 B.R. at 826.

[28] *Id.*

7

three times in six months, the debtors ask that the foreclosure sale be set aside so they may convert this case to chapter 7 to have a chapter 7 trustee sell the Property.[29]

The debtors have never argued that dismissal was improperly entered. Rather, they simply want yet another chance to save their residence from foreclosure. Protecting their equity is a valid, and recognized use of bankruptcy. To do so, however, the debtors must comply with their obligations as debtors in bankruptcy. Despite multiple chances, and warnings of the consequences of non-performance, they have failed to do what was required to protect their residence. Mr. William's illness, and the potential equity in the Property, cannot excuse their failure to comply with the court's order to timely notice their plan. Unlike the debtor in *Barry,* it was always within their control to maintain their bankruptcy proceeding, and the automatic stay. Having failed to do so, with knowledge of the consequences, there is no basis to set aside a valid foreclosure sale.

The court finds that the automatic stay terminated upon the dismissal of the bankruptcy case on December 12, 2012. Although the court vacated the dismissal and reinstated the bankruptcy on December 28, 2012, the stay did not retroactively apply to the interim gap between dismissal and reinstatement. Because the stay did not exist on December 20, 2012, the foreclosure sale that took place that day did not violate the automatic stay. The foreclosure terminated the debtors' ownership interest in the Property, though it appears that they continue to live there. Upon reinstatement, the debtors' naked possessory

---

[29] This is not a novel idea. The court raised the possibility of conversion to allow a chapter 7 trustee to sell the Property in its *Memorandum on Motion to Dismiss* (Docket No. 29) at 5 n. 18.

right remains in the bankruptcy estate and is protected by the stay.[30] However, having no title to the Property or ability to acquire title through the bankruptcy, cause exists to terminate the stay under 11 U.S.C. § 362(d)(1).[31] A separate order will be entered consistent with this memorandum.

DATED: March 13, 2013.

                                            BY THE COURT

                                            /s/ Gary Spraker
                                            GARY SPRAKER
                                            United States Bankruptcy Judge

Serve:  G. Sleeper, Esq.
         Debtors
         I. Zorea, Esq.
         L. Compton, Trustee
         U. S. Trustee

---

[30] *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc., (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 430 (2nd Cir. 1987).

[31] *In re Dixon,* No. A07-00209, 2007 WL 1589555 (Bankr. D. Alaska May 31, 2007)(cause exists where lease terminated pre-petition and debtor had only naked possessory interest); *In re Dunlap,* 378 B.R. 85, 92 (Bankr. E.D. Pa. 2007)

9